[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for dissolution of marriage. The plaintiff, whose maiden name was Beverly Kratka, and whose name by a prior marriage was Beverly Barber, married the defendant on May 31, 1981 at Bloomfield, Conn.
Both parties have resided continuously in the State of Connecticut for at least one year prior to the commencement of this action, and the court has jurisdiction in this case.
Trial in this matter was scheduled to begin before the undersigned on November 15, 2001. On that date, the plaintiff appeared with her counsel, ready to proceed. Counsel for the defendant[1] appeared, without his client. The explanation which the defendant provided to his counsel about his absence from court on that date was vague and unsatisfactory. The court finds that the defendant had notice of the November 15, 2001 trial date, and knowingly failed to attend the proceeding, despite the best efforts of his counsel to secure his participation. After discussion on the record with both counsel, and over the objection of defendant's counsel, the court directed that the trial would proceed as scheduled.
The court has carefully considered all of the evidence adduced at trial, as well as the provisions of C.G.S. Sections 46b-81 and 46b-82. The court finds that the facts set forth below were proven by a preponderance of the evidence at trial.
 FACTUAL FINDINGS
CT Page 16110
There are no minor children. One child, Shawna L. Bilodeau, was born of this marriage on January 26, 1982, and she has attained the age of majority.
None of the parties are receiving aid or assistance from the State of Connecticut, or any of its municipalities.
This is the second marriage for both the plaintiff and the defendant. The parties separated in January 1999, and have lived apart since that time. Financial pressures and a lack of communication caused the marriage to deteriorate. The court finds that the marriage has broken down irretrievably.
The plaintiff is 50 years old and enjoys good health. She has a high school diploma and attended a year of secretarial training at a local business school. The plaintiff was employed throughout her marriage. She currently works 40 hours per week as a cashier for the corporation which provides food service at CIGNA Insurance Company, and 10-15 hours per week as a part-time waitress. Her combined net weekly income from both jobs is $440.53.[2]
The defendant is 53 years old and the status of his health is unknown. As noted above, the defendant did not appear at trial and, as a result, the court did not receive his current financial affidavit. The court's ability to make findings concerning the defendant's assets and income was severely impeded by the defendant's failure to appear at court for the trial. With the exception of the first year that they were married, the plaintiff and defendant did not file joint annual income tax returns. As noted above, the parties have been separated for nearly three years. Accordingly, the plaintiff was not able to provide information about the defendant's current income. The plaintiff testified credibly at hearing that the defendant has been self-employed for a number of years as a landscaper, and earns money plowing snow during the winter.
The only sworn financial affidavit which the defendant provided to the court was submitted on December 15, 1999. The affidavit was signed by the defendant and bears the acknowledgment of his former counsel. That document is in the court's file, and the court takes judicial notice of the information contained therein. In the affidavit, the defendant listed his occupation as "landscaper" and indicated that he received gross income of $400 per week. Based on that affidavit, and the credible testimony of the plaintiff about the defendant's employment as a landscaper and snow plower, the court finds that the defendant has the ability to earn at least $20,800 per year. The court also finds that the defendant has received significant financial support from his mother CT Page 16111 throughout the marriage, and has relied on those contributions to meet some of his expenses.
The plaintiff owned a home at 10 Brooke Street in Bloomfield prior to this marriage. That asset, which has current equity of approximately $64,000, was a focal point in this proceeding.
The plaintiff was unable at trial to indicate the fair market value of the property, or the amount of the first mortgage which encumbered it, when she married the defendant. After the marriage, the defendant's mother moved into the home with the parties. An addition consisting of a bedroom and bath was added to the premises to accommodate the defendant's mother. The defendant's mother paid for the addition. During the last three years that the defendant's mother lived in the premises, she also contributed $100 per month toward utility expenses.
The Brooke Street property has a current fair market value of $110,000. There is a first mortgage on the property held by Webster Bank on which a principal balance of $12,893.60 is owed. The property is also encumbered by second and third mortgages held by a private lender, Conn 
Conn. The initial loans secured by those mortgages were for $20,000 and $11,000. The proceeds of these mortgage loans were used for debt consolidation and to purchase the defendant's truck. Under the terms of both loans, interest was to be paid at the rate of 15.5% per annum, with a provision that the interest amount would increase to 24% per annum if the parties were late on any monthly payment. Due to late payments, the interest rate on each mortgage is now 24%. The second mortgage has a current balance of $30,555.74[3], and the third mortgage has a remaining principal balance of $1,677.73.
After the dissolution proceeding commenced, the defendant received a gift or loan of approximately $43,000 from his mother, and the parties agreed that the sum would be used to eliminate the second and third mortgage debt on the Brooke Street property. The defendant gave the money to Alan Beck, his former counsel in the dissolution proceeding. The money was to be held in trust by Mr. Beck pending final settlement of the dissolution proceeding. It was subsequently discovered that Mr. Beck embezzled approximately $30,000 of that money. By an order of this court (Caruso, J.) the remaining $13,000 (which had been located in an IOLTA account held by Mr. Beck) was retrieved and applied by the parties to the third mortgage. At trial, the defendant's present counsel indicated that attempts to recover the stolen $30,000 have thus far been unsuccessful, since Mr. Beck died leaving no estate, and had no malpractice insurance. The defendant has a pending defalcation claim with Connecticut's Client Security Fund. The defendant's counsel, who also represents Mr. Bilodeau in the defalcation matter, stated at trial that it is presently unknown CT Page 16112 when the fund will act on the defendant's claim, or how much the potential settlement (if any) might be.
The only other significant asset of the marriage is the plaintiff's 401k account with her employer, which until recently had a value of $20,500. The 401k plan provides that the plaintiff may borrow one half of the amount in her account for housing emergencies. She recently borrowed $10,250 from the 401k account for use in paying down the second and third mortgages. Pending settlement or judgment in this proceeding, the plaintiff has placed the $10,250 borrowed from her 401k account in a Webster Bank account. At trial, the plaintiff proposed that she would pay that sum toward the second and third mortgages, and that the defendant should be held responsible for the remaining outstanding principal balances of those mortgages.
Since the parties separated in January 1999, the plaintiff has resided at Brooke Street and has paid the monthly mortgage payments for the property. The defendant resides in a home which was allegedly purchased by his mother.[4]
On December 15, 1999, this court entered pendente lite orders requiring the defendant to make regular monthly payments to the plaintiff as contribution toward the mortgages, and to pay half of the cost of the daughter's braces. Credible testimony by the plaintiff at trial proved that the defendant failed to make several of those monthly payments between December 15, 1999 and the present, and that the defendant owes an arrearage to the plaintiff in the amount of $2,532.20 for same.
Per the plaintiff's financial affidavit, and her credible testimony at trial, the court finds that the parties are indebted to First Union Bank in the amount of $1,548 for their daughter's braces. In accordance with the court's prior pendente lite order, each party is responsible for one half of that amount.
 ORDERS
Based on all of the evidence introduced at hearing, and the provisions of the applicable Connecticut General Statutes, which the court has applied to the facts of this case, the court enters the following orders:
1. The marriage is hereby dissolved on the basis of irretrievable breakdown.
2. The defendant shall pay to the plaintiff, as periodic alimony, the sum of $1 per year. Said periodic alimony shall terminate upon the death of either party, the plaintiff's remarriage or the plaintiff's CT Page 16113 cohabitation with a man, whichever event occurs first.
3. An arrearage of $2,532.20 is owed by the defendant to the plaintiff for the pendente lite payments referred to above. The defendant shall pay the plaintiff $20 per week on said arrearage until said sum is fully paid. In the event that the defendant receives any award or settlement from the Connecticut Client Security Fund, said sum shall be immediately applied to the payment in full of any outstanding balance owed by the defendant on the aforesaid arrearage.
4. Each party shall pay 50% of the sum of $1548 owed to First Union on the debt for their daughter's braces. The defendant shall pay the plaintiff $5 per week toward said debt until his share ($774) has been fully paid. In the event that the defendant receives any award or settlement from the Connecticut Client Security Fund, the proceeds thereof shall be immediately applied (after payment of the arrearage referred to in Order 3) to the payment in full of any outstanding balance owed by the defendant for his portion of the First Union debt.
5. The plaintiff shall retain and own exclusively the real property at 10 Brooke Street, Bloomfield, Connecticut. The plaintiff shall pay and hold the defendant harmless from the first mortgage on said property.
6. The debts owed by the parties for the second and third mortgages on the 10 Brooke Street property shall be allocated as follows:
 a. Within 60 days of the date of this judgment, the defendant shall pay the lump sum of $18,000 to the plaintiff. The plaintiff shall apply said sum to the payment of the outstanding balances owed on the second and third mortgages held by Conn Conn. The court finds, based on the defendant's historical ability to secure financial assistance from his mother, and the pendency of his claim with the Connecticut Client Security Fund, that the defendant has the capacity to comply with this order.
 b. In the event that the defendant does not pay the sum of $18,000 to the plaintiff within 60 days of the date of this judgment, he shall pay to the plaintiff the sum of $150 per week until said sum of $18,000 has been paid in full. The plaintiff shall apply said weekly payments to the payment of the outstanding balances owed on the second and third mortgages held by Conn Conn. CT Page 16114
 c. In the event that the defendant receives any award or settlement from his pending claim with the Connecticut Client Security Fund, said sum shall be immediately applied (after payment of the sums referred to in Orders 3 and 4) to the payment of any balance owed to the plaintiff on the lump sum payment of $18,000.
 d. The plaintiff shall pay the remainder of the amounts owed on the second and third mortgage debts owed to Conn Conn.
7. The plaintiff shall retain and own exclusively the sums in her Sodexho Marriot 401k plan account, Webster Bank account and Fleet Bank checking account, all as indicated on her November 15, 2001 financial affidavit. The defendant shall also own exclusively the 2000 Mitsubishi automobile.
8. The defendant shall retain and own exclusively his 1989 truck.
9. The defendant shall pay to the plaintiff, as a contribution toward her attorneys fees in this matter, the sum of $1,500 within six months of the date of judgment.
10. At trial, the plaintiff testified that certain equipment and personal property of the defendant remains at the 10 Brooke Street property. The plaintiff further alleged that despite her requests, the defendant has failed to remove his equipment and personal property. The court orders that the defendant remove said equipment and personal property within 30 days of the date of this judgment. The defendant shall contact the plaintiff and agree upon a mutually convenient date and time when he shall appear at 10 Brooke Street to retrieve his belongings. In the event that the defendant fails to comply with this order within 30 days of the date of judgment, his claim to any equipment or personal property currently in the possession of the plaintiff shall be deemed to have been abandoned, and the plaintiff shall retain and own exclusively all such equipment and personal property in her possession.
So ordered.
BY THE COURT:
Dyer, J.